[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action seeking damages for personal injury and property damage sustained by the plaintiff on April 26, 1991. On that date an automobile owned and operated by the plaintiff collided with an automobile owned by the defendant William Taylor and operated by his daughter, one Kelly Taylor. It is admitted by the pleadings and proven by testimony that Kelly Taylor was operating the vehicle owned by the defendant William Taylor as a family car within the scope CT Page 3883 of her authority.
By the second count the plaintiff claims that the defendant William Taylor and his wife the defendant Gloria Taylor conveyed their respective interests in the home at 87 Elizabeth Avenue town of Bloomfield to the defendant Hattie B. Taylor, mother of the defendant William Taylor on May 8, 1991 twelve days after the collision. The plaintiff claims that the conveyance was a fraudulent conveyance as to the plaintiff.
The plaintiff claims damages, and that the conveyance be set aside.
As to the first count, the accident occurred on April 26, 1991 on Rt. 159 adjacent to the private drive providing ingress and egress to the Windsor Shopping Center. The plaintiff was proceeding north on Rt. 129. The defendant was exiting the private drive. There was a traffic control signal, flashing red for vehicles exiting the drive and flashing yellow for vehicles proceeding north on Rt. 159.
Kelly Taylor claims to have stopped at the red light. She claims to have seen the plaintiff a very long distance down the highway. Kelly Taylor then exited and was struck by the plaintiff's vehicle broadside on her left side door. The impact occurred approximately half way across the two lanes of Rt. 129. She theorizes that the plaintiff must have been coming very fast because she did not again see the plaintiff until she, Kelly Taylor, was part way into the left lane of the two northbound lanes of Rt. 159. She claims to have been proceeding very slowly, about 5 or 6 miles per hour.
There were no obstructions to visibility. One could see a vehicle coming for a very long distance along this flat and straight highway. She did not observe the plaintiff's course of travel or see the vehicle approaching until just prior to impact.
The court finds that Kelly Taylor was negligent in failing to keep a reasonable and proper lookout for traffic approaching from her left, at and prior to entering the highway. The court finds that Kelly Taylor failed to grant a right of way to the vehicle operated by the plaintiff, in violation of Section 14-247 of the General Statutes of the CT Page 3884 State of Connecticut. Both of these allegations of negligence are alleged in paragraph 5 of the complaint. The court finds that each of these acts of negligence were a proximate cause of the collision, and of the injuries and damage sustained by the plaintiff.
The plaintiff testified that she did not see the Taylor vehicle until the occurrence of the collision — the time of impact. She did not see the Taylor car in the driveway. There were no cars in front of her. As stated, supra, there was nothing to obstruct her view of cars located in the driveway, or about to enter or entering the highway.
The defendant alleges, by Special Defense, that the plaintiff was negligent and careless in failing to keep a proper lookout for vehicles on the roadway, including the defendant's vehicle, and that this was a proximate cause of the accident. The court finds that the defendant has proven this allegation of negligence, and that the plaintiff's negligence, as aforesaid was a proximate cause of the collision and of the injuries and damage sustained by the plaintiff.
The court finds that the negligence of the defendant causing the injury and damage is sixty percent, and the negligence of the plaintiff causing the injury and damage is forty percent.
As a result of this occurrence the plaintiff sustained multiple soft tissue injuries, including strains, sprains, contusions, and trauma to body and limbs. She developed a mass in the breast which eventually required biopsy. The plaintiff further sustained a rotatory cuff tear of the right shoulder, with impingement syndrome, which required acrimioplasty and surgical repair of the rotator cuff. Consequently, she has a residual ten percent permanent partial impairment of the right arm. She also has scarring of the breast from the biopsy procedure, and scarring of the shoulder resulting from the rotator cuff surgery. The plaintiff was 42 years old at the time of the accident and has a life expectancy of 36 years, per the life tables entered in evidence. Although she does have pain in the right arm she is functioning quite well in performing the physical activities of her life. CT Page 3885
The court finds that the plaintiff incurred $10,431.64 in bills for medical care and attention. This amount is $38 less than the calculation submitted by the plaintiff, due to $38 error in calculating Dr. Mara's bills.
The court finds that the plaintiff was disabled from work for 22 weeks immediately following the accident, and hence lost $4,400 dollars in wages, calculated at the rate of $200 per week. Additionally the plaintiff claims to have been out of work for six to eight weeks following the breast biopsy. The court finds that the amount of time claimed is excessive, as this type of surgery, without complications should not disable for six weeks. The court finds this loss of wage to be three weeks, at $96 dollars per week, for a total of $288. No future medical treatment or lost wages are anticipated.
As to property damage, the court finds that towing charges were incurred in the amount of $344.50 and that the proven cost of repairs to the vehicle is $3,575.00. Total property damage is found to be $3,919.50.
The total economic loss sustained by the plaintiff, past and future is found to be $19,039.14.
The court determines non-economic loss, past and future, to be $20,000.
Total damages sustained by the plaintiff are $39,039.14. The amount of damages awarded, as reduced by 40% by virtue of the plaintiff's comparative negligence, is $23,423.48 dollars, under the first count of the complaint.
The second count of the complaint alleges a cause of action against the defendant William Taylor and his wife the defendant Gloria J. Taylor and his mother the defendant Hattie B. Taylor, claiming that the transfer of the home property in which the defendant, William Taylor and his wife reside, to his mother constitutes a fraudulent transfer. The plaintiff seeks money damages and/or that the conveyance be set aside.
The facts are as follows. The home in which the defendant William Taylor and his wife the defendant Gloria Taylor and their daughter Kelly Taylor reside was purchased in 1988. The home is on a small lot, located in the town of CT Page 3886 Bloomfield. The family had lived on Adams Street in Hartford and the move was to provide the family with an environment which did not have the problems attendant to living in the inner city.
Mr. Taylor is and was a steadily employed man of modest means. He did not have funds for the down payment for the house. The cost of the house was $140,000.
His mother the defendant Hattie B. Taylor is an elderly lady who is a retired school teacher. She furnished the sum of $40,000, consisting of her savings, to pay the down payment. Mrs. Hattie Taylor lives separately in quarters on Hardy Avenue in Bloomfield. She furnished the funds so that her son and granddaughter could have a decent place to live.
Mrs. Hattie Taylor lives on her pension and social security. Each month she furnishes $700 per month to help pay the subject mortgage. The total first and second mortgage payments, exclusive of real estate tax escrow, is $866.53.
The property at the time of the deed from her son to the mother in May 1991 had a fair market value of $110,000. A second mortgage had been taken out on the property prior to the auto accident. The combination of the first mortgage and the second mortgage balance, at the time of this trial, was $114,341.36, consisting of first mortgage of $97,128.14 and second mortgage of $17,213.22. The present balance of the first mortgage is less than it would have been in May 1991 due to monthly amortization payments. The property, at the time of trial has a total fair market value of $110,000, which remains significantly less than the liens of the two mortgages at the time of transfer or at trial.
By the date of the conveyance, May 8, 1991 the declining real estate values in the geographical area had caused the property to have a value which was less than the mortgage balances.
The transfer from Mr. William Taylor and his wife Mrs. Gloria Taylor to Mr. Taylor's mother Hattie B. Taylor took place on May 8, 1991. The accident took place on April 26, 1991. A letter dated May 1, 1991 was mailed to Kelly Taylor by Attorney Poliner. The letter was received by Kelly Taylor at some point in time, the date of receipt being CT Page 3887 uncertain.
Mr. Taylor testified that he had always been embarrassed by the fact that he could not support his family and provide them with decent housing from his own labor. He had for a long time understood that the property belonged to his mother, she having paid all of the $40,000 down payment and furnished almost all of the funds to pay the monthly mortgage payments. He did not understand that he would be responsible for the accident, as the attorney's letter was directed solely and exclusively to the daughter Kelly. He had intended for a long time to deed the property to his mother, whom he considered to be the rightful owner.
He did not discuss the accident with the attorney when he had the attorney draw the quit claim deed.
Mrs. Hattie B. Taylor testified. Her son did not tell her about the transfer until sometime after it occurred. She thought nothing about it and was not surprised. She had always thought the property was hers, as she had paid all of the down payment and paid most of the amount of the mortgage payments. She did not feel or think that the sums advanced by her were a gift to her son. The defendant William Taylor's long term expectation was that eventually the house would have been sold and that his mother would have recaptured the amount that she invested in the house. These goals are in keeping with the unrealistic expectation, in retrospect, of the unrealistic real estate market of the late 1980's.
The burden of proof is upon the plaintiff in prosecuting a cause of action for fraudulent conveyance.
"To prove that a conveyance was fraudulent, it must be shown that the conveyance was made without any substantial consideration and rendered the debtor unable to pay his existing debts, or that it was made with a fraudulent intent in which the grantee participated." Rocklen, Inc. v. Radulesco, 10 Conn. App. 271, 277.
The court finds in the instant case that the transfer was by virtue of the obligation incurred to the defendant Hattie Taylor for advancing the funds, as aforesaid. Whether this be viewed as a transfer to the rightful owner, or in repayment of a debt, is immaterial. The transfer was made CT Page 3888 for consideration. See Fyers v. Coma, 214 Conn. 8, 12.
Further, the transfer did not cause the son to be unable to pay his existing debts. His income and assets were such that he could not as much as pay the mortgage, or what would be the equivalent of reasonable rent. The "equity" in the home was a significant negative, and a retention of the property could be of no assistance to him in meeting any obligations. Economically the debt of the mortgages vs. the fair market value of the house was a net liability, not an economic asset. The court further finds that the mother Hattie B. Taylor did not participate in the transfer. She did not know about it until after it actually occurred.
The court finds that there was not a fraudulent transfer. The court finds for the defendants on the second count of the complaint.
Prior to entering judgment the court will receive evidence to determine collateral source payments, and to determine contributions by the plaintiff to secure collateral source benefits. See Connecticut General Statutes Sec. 52-255a(b)(c). Counsel shall contact the court to schedule the hearing.
L. Paul Sullivan, J.